**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOHN J. NADING, | ) |
| PLAINTIFF, | ) ) ) |
| vs. | ) ) CASE NO. 07-CV-299-FHM ) |
| MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration, | ) ) ) ) ) |
| DEFENDANT. | ) |

## OPINION AND ORDER

Plaintiff, John J. Nading, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's February 17, 2004 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held October 5, 2005. By decision dated February 21, 2006, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on April 14, 2007. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 44 years old at the time of the Decision. [R. 23]. He claims to have been unable to work since March 1, 1986. At the hearing, Plaintiff's attorney amended the onset date to April 1, 2002. [R. 297]. Plaintiff claims disability due to back pain, right shoulder pain, arthritis in both hands and feet, blindness in the right eye, blurred vision in the left eye, sugar diabetes, headaches, dizziness, lung problems, hiatal hernia, sleep apnea and obesity. [R. 266- 270].

The ALJ found that Plaintiff has severe impairments consisting of status post old compression fractures at T12 and L1, disc herniation at L5-S1, degenerative disc disease and blindness in the right eye. [R. 19]. He determined that Plaintiff retains the residual functional capacity (RFC) to perform light work activity that does not require vision in the right eye. [R. 21]. Based upon Plaintiff's earnings record and vocational report, the ALJ found Plaintiff had no past relevant work in the last 15 years. [R. 21]. Relying upon the testimony of a vocational expert (VE) at the hearing, the ALJ determined that there are a significant number of jobs in the economy that Plaintiff could perform with that RFC. [R.22]. He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 23]. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing

2

the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ failed to: 1) perform a proper step five determination; 2) perform a proper credibility determination; and 3) properly develop the record.  For the reasons discussed below, the Court affirms the decision of the Commissioner.

## Medical Evidence

The record contains x-ray reports from 1982, 1983 and 1985 showing no evidence of bony injury to the right shoulder and elbow, right leg, ankle and foot, facial bones and left forearm. [R. 195-198, 256-259].  The next medical document is a normal chest x-ray report dated November 3, 1987. [R. 194, 255].  The record contains another chest x-ray dated January 9, 1993. [R. 193, 254].  A series of x-rays were taken after Plaintiff was in a motor vehicle accident on November 12, 1993, of the sternum, chest, skull, thoracic and lumbar spine. [R. 191A-192, 252-253].  They indicated acute compression fractures of T-12 and L1 with anterior wedging of vertebral bodies, otherwise negative. *Id*.  On November 4, 1998, an x-ray of the lumbar spine was compared to the November 12, 1993 previous study and revealed mild narrowing between L5-S1, an old compression T12 and L1, and minimal degenerative changes. [R. 191, 251].  An examination report from the Bartlesville Regional Eye Center on March 22, 1999, shows disc edema of the right eye. [R. 115-116]. An MRI of the head conducted on March 25, 1999, was a normal exam. [R. 190].  A consultation note on April 5, 1999, reflects the diagnosis of Optic Neuritis of the right eye.[2] [R. 114].

---

[2] Inflammation of the optic nerve. Dorlands' Ill. Med. Dictionary 28th ed. (1994) 1127, 1187.

The next treatment report in the record is an August 16, 2001, handwritten note from the Nowata County Rural Health Clinic (Nowata clinic) indicating that Plaintiff was assessed with hypertension (HTN) and was prescribed Lisinopril. [R. 129]. Plaintiff was seen in the Jane Phillips Medical Center on January 3, 2002, for an abscessed tooth. [R. 117-120]. Plaintiff's prescription for Lisinopril was refilled on February 25, 2002, at the Nowata clinic. [R. 129].

On July 2, 2002, Plaintiff was seen at the Nowata clinic for monitoring of hypertension and for medication refill. [R. 128]. He had no complaints of chest pain or shortness of breath. He was encouraged to lose weight with diet and exercise. *Id.* His weight was the same, 339 lbs., at his follow up exam six months later. [R. 127]. On July 6, 2003, he was seen at Jane Phillips Medical Center with complaints of right eye pain. [R. 122-125]. He reported he had been grinding, with eye protection off, the day before and had metal in the right eye. [R. 123]. He was diagnosed with corneal abrasion. He was given Lortab[3] and an eye patch which he was told he could remove in two days. [R. 122]. Plaintiff's Lisinopril prescription was refilled at Nowata County Clinic on January 26, 2004. [R. 127]. At the follow up examination on February 12, 2004, Plaintiff's weight was 360 lbs. and he was again counseled on diet and exercise. [R. 126].

---

[3] Lortab (hydrocodone bitartrate and acetaminophen) is a semisynthetic narcotic analgesic and antititussive indicated for relief of moderate to moderately severe pain. *Physicians' Desk Reference* (PDR) 53rd ed. 3162.

4

On April 22, 2004, Plaintiff was admitted to Jane Phillips Medical Center for a pulmonary contusion[4] without open wound into thorax, multiple abrasions,[5] closed head injury and five rib fractures incurred in a motorcycle accident. [R. 131-144]. While in the hospital, Plaintiff was diagnosed with type II, non-insulin dependent diabetes mellitus. [R. 140]. At discharge, Plaintiff was prescribed Vasotec and Lortab, told to use over-the-counter ibuprofen and counseled by a dietician. [R. 144].

Plaintiff was examined by an agency consultative physician, Moses A. Owoso, M.D., on May 27, 2004. [R. 145-151]. Plaintiff gave a history of low back pain resulting from a work related injury in 1983 and other subsequent accidents, including a motorcycle accident. [R. 145]. He did not describe any radicular pain into his arms and legs. He said he had not worked for several years because the VA (Veterans Administration) paid him to care for his sick father and to care for his mother after his father's death. [R. 145]. Plaintiff's weight was 350 lbs. [R. 146]. Upon examination, Dr. Owoso found no peripheral edema, cyanosis or clubbing, normal dexterity for gross and fine movements; all major joints were normal, with no swelling, effusion, nodularity or instability. [R. 146]. There was no joint line tenderness. Strength in all muscle groups of the extremities measured 5/5 bilaterally; tone was normal; grip was 5/5 bilaterally. Deep tendon reflexes were all normal. *Id.* Alignment of the spine was normal and there was no localized tenderness or muscle spasm. [R. 147]. The straight leg raising test was negative for radicular pain bilaterally; gait

---

[4] Pulmonary pertains to the lungs; contusion is a bruise. Dorlands' Ill. Med. Dictionary, 28th ed. (1994) 374, 1386.

[5] Abrasion is the rubbing or scraping of the surface layer of cells or tissue from an area of the skin or mucous membrane. See medical definitions online at: http://www2.merriam-webster.com/cgi-bin/mwmednlm.

5

was balanced, stable, normal and safe. Plaintiff got on and off the exam table independently. His coordination, static balance and dynamic balance were good. He sat well, stood well and could go from sit to stand normally. [R. 147]. Flexion and extension of the fingers and hands were within functional limits bilaterally as were the lower extremities. [R. 147]. Dr. Owoso's clinical impressions were 1) obesity; 2) hypertension, controlled on medication; and 3) complaint of low back pain without radiculopathy.[6] Range of motion tests were all normal. [R. 148-150]. There were no complaints of chest pain. [R. 151].

A Physical RFC assessment was prepared by an agency medical consultant on June 7, 2004. [R. 182-189]. It reflects exertional limitations of: lifting and/or carrying to 20 pounds occasionally, 10 pounds frequently; standing and/or walking (with normal breaks) for a total of about 6 hours in an 8-hour workday; sitting (with normal breaks) for a total of about 6 hours in an 8-hour workday; and unlimited ability to push and pull (including operation of hand and/or foot controls.[7] [R. 183]. Postural limitations for only occasional stooping and crouching were assessed. [R. 184]. The consultant explained the RFC conclusions were based upon Plaintiff's history of obesity and chronic back pain; right eye injury and poor vision; left eye 20/15; injuries consisting of lung contusion, rib fractures; some shortness of breath; the examining physician's range of motion findings and observations; and the lack of evidence of heart problems. [R. 183-184].

---

[6] Radiculopathy: any pathological condition of the nerve roots. See medical definitions online at: http://www2.merriam-webster.com/cgi-bin/mwmednlm.

[7] The agency medical consultant determined there was insufficient evidence to rate Plaintiff's RFC as of December 1991, the date he was last insured. [R. 152]. *See Washington v. Shalala*, 37 F.3d 1437, 1440 n.2 (10th Cir. 1994) (To qualify for disability insurance benefits, a claimant must establish that he became disabled on or before the date he was last insured.).

The first medical evidence appearing in the record from Robert Sweeten, M.D., Plaintiff's treating physician, is dated September 21, 2004. [R. 219, 241]. Plaintiff brought an x-ray and paperwork to the appointment and reported he "had 2 broken backs" in a motorcycle accident. *Id.* Dr. Sweeten noted a boil in the groin area, the probability of sleep apnea and Plaintiff's complaints of back pain and planned to obtain an MRI of the lumbosacral spine. *Id.* On October 26, 2004, Plaintiff returned for followup, reporting he still had a few boils and requesting pain medication. [R. 218]. Dr. Sweeten recorded continuing complaints of back and joint pain and prescribed Voltaren, a nonsteroidal anti-inflammatory, and Ultram, an analgesic. *Id.* An MRI was conducted on October 28, 2004, which revealed broad based L5-S1 disc herniation without spinal stenosis or nerve root contact and mild chronic-appearing L1 compression fracture. [R. 201-203, 245]. On January 13, 2005, Dr. Sweeten reported Plaintiff had continuing complaints of back pain "Darvocet not helping." [R. 217. 239]. He prescribed Lortab. *Id.* On February 22, 2005, Dr. Sweeten treated Plaintiff for bronchitis and upper respiratory infection. [R. 216, 238].

Plaintiff was seen at the Jane Phillips Medical Center Emergency Room on March 8, 2005, for rectal bleeding. [R. 205-213]. He was noted to be taking Lortab and blood pressure medications. He was treated, discharged in stable condition and referred to Stephen Kirkpatrick, M.D. [R. 207]. The next day, Plaintiff's mother called the emergency room staff advising that pain medication was supposed to be called in. [R. 204]. The chart was reviewed but there was no mention of pain medication and Plaintiff was advised to follow up with Dr. Kirkpatrick or Sweeten. *Id.*

On June 7, 2005, Plaintiff complained to Dr. Sweeten of severe pain in his back and knees and swollen hands. [R. 215, 237]. Dr. Sweeten noted continuing back pain, an

increase in problems at night, trouble breathing and back spasms and he refilled Plaintiff's medications, including Lortab. *Id.* Plaintiff sought treatment from Dr. Sweeten on August 11, 2005, for an injury to his right heel when he stepped on a pop cap. [R. 214, 236]. Dr. Sweeten continued Plaintiff's medications, including Lortab for back pain, and added a prescription for Prednisone.[8]

Dr. Sweeten's treatment note from September 15, 2005, was not part of the record that was before the ALJ when he issued his decision on February 21, 2006. [R. 235]. The document was provided to the Appeals Council, along with copies of Dr. Sweeten's prior treatment records as previously described, with Plaintiff's request for review. [R.5, 231-233]. This evidence is part of the administrative record and must be considered when evaluating the Secretary's decision for substantial evidence. *See O'Dell v. Shalala*, 44 F.3d 855, 858- 59 (10th Cir.1994). The treatment note reflects Plaintiff complained of having bad headaches, centered, left eye, severe arthritis in his hands with pain and swelling, and continuing back and joint pain. [R. 235]. Plaintiff rated his pain at 5 to 8 on a 10-scale most days which decreased to a rating of 4-5 with pain medication. *Id.* Dr. Sweeten continued Plaintiff's treatment regimen, noting his Lortab refill was not due until October 1, 2005, and told him to return in one month. *Id.*

---

[8] Prednisone is a corticosteroid hormone (glucocorticoid). It decreases the immune system's response to various diseases to reduce symptoms such as swelling and allergic-type reactions. It is used to treat conditions such as arthritis, blood disorders, breathing problems, certain cancers, eye problems, immune system diseases, and skin diseases. See drug information online at: http://fdb.rxlist.com/drugs/drug-1787-Detasone.

Also among the records provided to the Appeals Council was a new patient notation from an unidentified Doctor of Osteopathy dated February 7, 2007, indicating Plaintiff was seeking treatment of HTN and pain in the back, knee and hands. [R. 234].

### The ALJ's Decision

In his written decision, the ALJ acknowledged the x-ray evidence of compression fractures at T-12 and L1 and mild narrowing at L5-S1 from 1993. [R. 19]. He summarized the subsequent medical evidence in the form of emergency room and hospital records, including Plaintiff's visual examination and the 1998 MRI study indicating disc herniation at L5-S1 and old compression fracture at L1. *Id.* Referring to the exhibit number for Dr. Sweeten's treatment records, but without naming the source, the ALJ said: "He is treated conservatively for back pain." [R. 19].

After reporting on Plaintiff's testimony at the hearing, the ALJ noted Plaintiff had decided to stay home after 1986 to help his father who was a paraplegic and was in a wheelchair and that the record contained no significant medical evidence prior to 1999. [R. 20]. He cited Plaintiff's failure to seek medical treatment for relief of pain from public facilities for indigent care, his daily activities and the fact that Plaintiff's treating physicians did not place any functional restrictions on his activities as support for his conclusion that Plaintiff's complaints "cannot be found as fact." [R. 20-21].

The ALJ assessed an RFC for Plaintiff for light level work activity that does not require vision in the right eye. [R. 21]. Because Plaintiff had not worked in the last fifteen years, the ALJ concluded he had no past relevant work. [R. 21]. He listed the jobs identified by the VE at the hearing in response to: "a series of facts based upon the claimant's condition as it is outlined in the record and in this decision" as jobs available in

the economy that Plaintiff could perform with his RFC. [R. 21-22]. Jobs identified were office cleaner, production inspector, hand packer and assembler. *Id.*

## **Step Five Determination**

Plaintiff asserts the ALJ's step five determination was improper because: his hypothetical contained a sit/stand option which was not present in his RFC; his inclusion of a sit/stand option precluded light and sedentary employment; his hypothetical to the VE was not precise because it failed to include all Plaintiff's impairments; and he did not determine whether the VE's testimony differed from the Dictionary of Occupational Titles (DOT). [Dkt. 15].

At the hearing, the ALJ presented the following hypothetical to the VE:

> Okay. Assume that we have an individual who's 44 years old with a 9th grade education. Who has a limited ability to read, write, and use numbers. That is he'd read slowly and probably have to limit himself to simple words, simple writing. Who can now perform, well, let's say he's limited to light exertional level work. He has additional functional limitations because of blindness in his right eye such that he presumably have some trouble with depth perception, although I understand some people can learn to make some adjustment for that but he would have trouble making fine distinctions and depth perception. Let me see, he can only occasionally stoop or crouch. All right. Assume further that this individual is afflicted with symptoms from various sources including mild to moderate chronic pain which is of sufficient severity to be noticeable to him at all times. But he would, and he would be able to remain attentive and responsive in a work setting and could carry out normal work assignments satisfactorily. Assume further that this individual takes medication for relief of his symptoms but the medications do not preclude him from functioning at the level indicated. And that he would remain reasonably alert to perform required functions presented by his work setting. Assume further that this individual, while functioning at the level indicated, would find it necessary to change position from time to time to relieve his symptoms. Let's say if he was sitting he'd have to stand approximately

> every half hour for a minute or two and then be able to sit down again. Assuming the foregoing hypothetical would an individual with the previous physical and functional restrictions can you identify any jobs such an individual can perform?

[R. 291-292]. As the VE commenced identifying available jobs, the ALJ interrupted his testimony to request the DOT numbers. [R. 292].

Plaintiff asserts the inclusion of a sit/stand option did not appear in the RFC set forth in the ALJ's written decision and that reversal is required on that basis. It is true that the RFC set forth in the ALJ's written decision does not include the details he gave the VE in the hypothetical at the hearing. [R. 21, 291-292]. However, counsel's characterization of the RFC given by the ALJ in the hypothetical is incorrect.

In both instances, the ALJ determined Plaintiff has the RFC to perform light work.[9] The first hypothetical the ALJ presented to the VE was for an individual limited to light exertional level work. [R. 291]. Among all the assumptions he asked the VE to make concerning the person's ability to read, write, use numbers, see, etc., he asked the VE to assume that while functioning at that [light] exertional level, the person would find it necessary to change position from time to time to relieve his symptoms. [R. 292]. As an example of when that situation might occur he said: "Let's say **if** he was sitting..." *Id.* (emphasis added).

The testimony cited by Plaintiff was in response to counsel's question in which he asked if an office cleaner "would be able to sit like that." [R. 294].

---

[9] As set forth in a footnote to the RFC finding in the ALJ's decision [R. 21], light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

>   Q.   Okay, and then the Judge, in that first hypothetical, limited the individual to changing positions from to time and then said sit for 30 minutes and stand for 1 or 2 minutes. Would the office cleaner be able to sit like that?
>
>   A    Sit for a few minutes and then stand?
>
>   Q    Sit for 30 minutes and then stand?
>
>   A    No, I mean they wouldn't be able to sit for 30 minutes, no.
>
>   Q    And the inspector jobs the - -
>
>   A    Light jobs would not allow a person to sit for 30 minutes.

[R. 294].

The VE's response indicates she meant to clarify that the light job as an office cleaner did not allow sitting for thirty minutes. Contrary to Plaintiff's argument, the VE did not contradict herself after identifying the jobs Plaintiff could perform with the RFC described by the ALJ. [Dkt. 15, p. 3]. The ALJ did not restrict Plaintiff's RFC for light jobs to only those allowing sitting for thirty minutes and the VE did not testify that "there was no light work available" for a person with Plaintiff's RFC.

Assuming *arguendo*, that Plaintiff were assessed with an RFC which encompassed a sit/stand option, his argument that there would be no light jobs that he could perform is unpersuasive. *See* Soc.Sec. Rul. 83-12, 1983 WL 31253 at *4.[10] In

---

[10] In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. Most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS (vocational source) should be consulted to
(continued...)

this case, the ALJ consulted a VE in determining the availability of jobs for a person with Plaintiff's RFC. The VE identified office cleaner, production inspector and hand packer as light jobs that would be available. [R. 292].

As to Plaintiff's ability to perform the prolonged sitting required to perform sedentary work, the need to stand every half hour or so for a minute or two would affect the availability of jobs that Plaintiff could perform in that category. *See* Soc.Sec.Ruling 96-9p, 1996 WL 374185, at *7 (when the need to alternate required sitting of sedentary work by standing (and, possibly, walking) periodically, erodes the occupational base for a full range of unskilled sedentary work, a vocational resource should be consulted). Plaintiff's suggestion that there is no sedentary work available that he can perform is without merit. [Dkt. 15, p. 3]. The VE identified sedentary assembly work in response to the ALJ's hypothetical which contained the thirty minute restriction. [R. 292].

Contrary to Plaintiff's argument, the ALJ's decision contains the lifting requirements of Plaintiff's RFC in his decision and the hearing transcript reflects that the VE fully understood the exertional requirements of light and sedentary work. [R. 21, 293]. The VE identified the DOT numbers for the jobs at the hearing. [R. 292]. While the ALJ did not specifically ask whether her testimony conflicted with the DOT, no discrepancies requiring explanation are apparent. *See* Soc.Sec.Ruling 00-4p at *4, 2000 WL 1898704 ("If the VE's ... evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict.").

---

[10] (...continued)
clarify the implications for the occupational base. *Id.*

Under the circumstances of this case, the Court finds no grounds for reversal on the basis that the RFC findings expressed in the ALJ's written decision did not match, word-for-word, the hypothetical presented at the hearing. *See Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993) (refusing to remand where technical omission in ALJ's decision-making process "if error, was minor enough not to undermine confidence in the determination of this case").  The record demonstrates that the ALJ adequately addressed the exertional requirements of Plaintiff's RFC in the hypothetical and that the VE's testimony provides substantial evidence for the ALJ's step five findings.

### **Credibility Determination**

Plaintiff asserts the ALJ did not properly consider the factors as required by case law; that he mis-cited the medical evidence and that he did not properly discuss the medical evidence that supported Plaintiff's complaints of pain. [Dkt. 15, p.4].  He complains that the ALJ did not acknowledge that Dr. Sweeten was one of Plaintiff's treating doctors and that he ignored "that the Nowata Rural Health Clinic was never determined to not be a free clinic." [Dkt. 15, p.4-5].  He disputes the degree of pain the ALJ found to be credible and he faults the ALJ's notation that treatment of his pain has been conservative. [Dkt. 15, p. 5].  He argues the "arthritic changes" sufficient to make his claims of pain credible were ignored by the ALJ and that his condition deteriorated since 1982. [Dkt. 15, p. 6].  Finally, he claims the ALJ did not state what evidence he used to determine Plaintiff's activities were not indicative of totally disabling pain or which of Plaintiff's testimonial statements he accepted as true and which he disbelieved. [Dkt. 15, p. 6-7].

Credibility determinations are peculiarly the province of the finder of fact, and the Court does not upset such determinations when supported by substantial evidence."*Hackett,* 395 F.3d at 1173 (quotation omitted). In assessing the credibility of pain testimony, various factors are relevant, including: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. *Branum v. Barnhart,* 385 F.3d 1268, 1273-74 (10th Cir.2004) (quotation omitted).

Plaintiff concedes the ALJ acknowledged he "had pain from his impairment." [Dkt. 15, p. 5]. Plaintiff disagrees with the ALJ's determination that despite his pain, he is able to perform light level work. [R. 21]. Basically, Plaintiff is dissatisfied with the weight given the evidence by the ALJ. Plaintiff essentially asks the Court to reweigh the evidence. This it cannot do. *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

The ALJ noted that none of Plaintiff's treating physicians had placed functional restrictions on his activities and he compared Plaintiff's claims with the medical evidence and Plaintiff's daily activities. [R. 21]. Plaintiff has not identified what evidence was "mis-cited" by the ALJ. [Dkt. 15, 4-7]. Review of the record reveals no evidence that overwhelms or contradicts the ALJ's findings regarding the credibility of Plaintiff's claim of disabling pain. The ALJ provided a sufficient link between the evidence and his determination that Plaintiff's allegations of pain so severe that he is unable to engage in gainful activity were not credible. The Court concludes that his credibility assessment is

supported by substantial evidence in the record.

## Development of the Record

Plaintiff contends the ALJ failed to properly develop the record "because he failed to attempt to obtain the medical information that came to his attention at the hearing." [Dkt. 15, p. 8]. At the commencement of the hearing, the following conversation took place between the ALJ and Plaintiff's attorney:

> ALJ: Do you need time to obtain and submit any additional evidence?
>
> ATTY: Yes, Your Honor, apparently Dr. Robert Sweeten [phonetic] of the Sweeten Medical Clinic, a treating physician, has completed an RFC. It was, as I understand it, mailed back to me a few days ago but I have not received it and so I'd like a little time to get, to confer with the doctor and see if I can't that to you, Your Honor.

[R. 263]. Plaintiff's attorney was granted an additional ten days after the close of the hearing to submit the document. *Id.* At the close of the hearing, this exchange occurred:

> ALJ: Well, it'll be interesting to see what Dr. Sweeten comes up with if you get that RFC from him.
>
> ATTY: Yes, Your Honor.
>
> ALJ: That may, that my [sic] carry a lot of weight too. And I'm not arguing with you I'm just trying to point out that I see some problems here. Mostly just lack of support in the record apparently for a lot of his complaints.
>
> ATTY: And then a large part of that is due to the fact that the claimant is unable to pay for medical, for medical.
>
> ALJ: Yeah. But you know that makes my job harder too.
>
> ATTY: I, as it does mine, Your Honor.

> ALJ: Okay.
>
> ATTY: But Dr. Sweeten is a treating physician and Dr. Sweeten is prescribing the medication and he is prescribing pain pills so he obviously takes the claimant's complaints of pain to be serious. And, as I understand it, Dr. Sweeten does not like to dole out prescription pain medication. He's sort of against that and so the fact that he's doing it, I think, just even lends more credence to the claimant's testimony.
>
> ALJ: Okay. Is that all you have today?
>
> ATTY: I'll get -- yes, Your Honor.
>
> ALJ: Okay. Well, I'll look forward to seeing what we get from Dr. Sweeten. Maybe that'll help clear some of this up.

[R. 298-299].

More than four months elapsed after the hearing before the ALJ's decision was issued. [R. 17-23]. There is no indication in the record that Plaintiff ever submitted the RFC from Dr. Sweeten or requested assistance from the ALJ to secure the report. Plaintiff's briefs are silent with respect to counsel's endeavors in obtaining the evidence. The same attorney who represented Plaintiff at the hearing requested review by the Appeals Council on behalf of Plaintiff on March 27, 2006. [R. 231-233]. Submitted with that request were duplicate copies of Dr. Sweeten's treatment records from September 21, 2004 to August 11, 2005. [R. 236-241]. The September 15, 2005 progress note by Dr. Sweeten and the February 7, 2007 new patient note from an unidentified D.O. were the only updated medical records submitted by counsel. [R. 235]. Plaintiff did not advise the Appeals Council that the record was incomplete or that any additional evidence was needed in order to fairly adjudicate his claim. [R. 231-233]. Now Plaintiff

faults the Commissioner for not obtaining "the records that [Plaintiff] told him about." [Dkt. 15, p.8].

In cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored,"and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir.1997).  Although the ALJ has the duty to develop the record, the ALJ is not required to act as the claimant's advocate in order to meet this duty. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (neither counsel nor claimant obtained or tried to obtain the records about which they complained on appeal, suggesting that counsel abandoned his role as advocate in favor of relegating that responsibility to the ALJ). *See also Shannon v. Chater*, 54 AF.3d 474, 488 (8th Cir. 1995) (claimant's failure to obtain or even try to obtain records suggests those records may only have been of minor importance).  The Court finds no grounds for reversal on this basis.

Plaintiff's complaint that the ALJ failed in his duty to develop the record by obtaining copies of the Workers' Compensation Court (WCC) records is likewise without merit. [Dkt. 15, p. 8-9].  Plaintiff listed "Attorney Bell" in his application papers as handling a WCC claim in 1983. [R. 73].  He also provided the WCC claim number for a 1989 claim. [R. 98].  Both claims were filed prior to Plaintiff's alleged onset date of April 1, 2002. [R. 297]  In fact, when Plaintiff's counsel amended the onset date, he agreed with the ALJ that "there is nothing going back to 1986" in the medical evidence that would support Plaintiff's disability claim. [R. 296-297].  He did not take that

opportunity to advise the ALJ that the WCC records would be beneficial.  His broad assertion now that "the evidence in a Worker's Compensation claim can be very detailed" does not convince the Court that the ALJ's duty of inquiry and factual development required him to obtain the WCC records. See Grogan, 399 F.3d at 1263; 20 C.F.R. § 404.1523(d).  Plaintiff has not indicated that the WCC or any treating or examining physicians found him unable to perform light work activity.  Plaintiff testified at the hearing that he started seeing a doctor about arthritis just two years before the hearing. [R. 268].  That treating physician was Dr. Sweeten, whose records the ALJ considered.  Because the medical evidence reviewed by the ALJ included objective medical evidence from as far back as 1982, the Court concludes the WCC records were not required in order for the ALJ to properly determine whether Plaintiff was entitled to Social Security benefits with a disability onset date in 2002.

## Conclusion

The Court finds the ALJ properly considered the evidence in determining that Plaintiff is able to perform light level work activity with additional limitations.  The record as a whole contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 18th day of August, 2008.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE